# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOAN T. KLOTH-ZANARD,<br><br>        Plaintiff,<br><br>        v.<br><br>DANNEL MALLOY, ET AL<br><br>        Defendants. | No. 3:15-cv-00124 (MPS) |

## RULING AND ORDER

*Pro se* Plaintiff Joan Kloth-Zanard sues Governor Dannel Malloy,  Roderick Bremby,  Commissioner of the Department of Social Services ("DSS"),  Joette Katz, Commissioner of the Department of Children and Families ("DCF"),  Christine Lupke,  Jean Norvig,  Carl Graham-Leichner, DSS, "Danbury DCF" and DCF (collectively, the "Defendants").[1] (Third Am. Compl., ECF No. 87 at 5) ("Compl.")  Plaintiff asserts constitutional, statutory, and state common law claims arising from (i) DSS's alleged denial of her education rights under the "Welfare Reform

---

[1] A few notes as to the parties: First, although Plaintiff's amended complaint (ECF No. 37) also listed Christopher Zanard and the United States of America as plaintiffs in this action, the Court dismissed them because neither party had appeared and because Joan Kloth-Zanard is not an attorney and may not represent others.  (ECF No. 69)  Second, "Danbury DCF" is not a distinct legal person but "[a] geographic location of the DCF office."  (ECF No. 93 at 1-2)  The Court thus construes "Danbury DCF" as a reference to DCF.  Third, although the complaint does not indicate the capacities in which the individual defendants have been sued, the proof of service available on the docket indicates the following: Dannel Malloy, Joette Katz, Christine Lupke, and Jean Norvig have been sued in their individual capacities.  Roderick Bremby and Carl Graham-Leichner have been sued in both their individual and official capacities.  (ECF Nos. 47, 52, 61-64, 66, 67, and 84.)  Under Connecticut law, the methods of service differ for individual and official capacity claims.  *Williams v. Foley*, 2016 WL 4497746 *6-8 (D. Conn. Aug. 25, 2016); *see also* Fed. R. Civ. P. 4(e).

[A]ct and [d]omestic [v]iolence [l]aws," *id.* at 5, (ii) DSS's alleged failure to accommodate her alleged disabilities at a 2012 administrative hearing in which she challenged a lien placed on her property by DSS, and (iii) DCF's placement of her name on the Connecticut child abuse and neglect registry. *Id.* at 8, 10. Her 75-page third amended complaint includes 16 counts, each against all Defendants. *Id.*

For the reasons set forth below, the claims for Violation of the ADA and Section 504 of the Rehabilitation Act (Count 1), Violation of Education Rights (Count 2), Violation of Fifth Amendment Due Process Rights (Count 5), Violation of Sixth Amendment Right to Confront a Witness (Count 6), Violation of Civil Rights under §1985 (Count 7), and Perjury under § 1621 (Count 10) are dismissed with prejudice. Plaintiff's claim for Violation of Fourteenth Amendment Due Process Rights (Count 5) based on the failure of DCF to remove her name from the abuse and neglect registry is dismissed without prejudice, and she may replead this claim within 30 days in accordance with the Court's instructions set forth in the Conclusion below. The state-law claims for Violation of Fiduciary Duties (Counts 3 and 4), Defamation (Count 8), and Slander and Libel (Count 9) are dismissed without prejudice to being asserted in state court, except that they may be reasserted in this Court if the Plaintiff ultimately pleads a plausible Fourteenth Amendment claim (see above). The remaining counts – Loss of Liberty (Count 11), Loss of Reputation (Count 12), Mental Pain and Suffering (Count 13), Loss of Employment and Earning Capacity (Count 14), Loss of Enjoyment of Life (Count 15), and Right to Punitive and Other Damages (Count 16) – are dismissed with prejudice because they merely assert different types of harm flowing from the alleged violations of her rights set forth in the other counts, rather than cognizable causes of action on their own.

## I.    Procedural History

On January 29, 2015, Plaintiff filed her original complaint, which sought injunctive and monetary relief, and a motion to proceed *in forma pauperis*.  (ECF Nos. 1 and 2)  This Court dismissed the original complaint under 28 U.S.C. § 1915(e)(2)(B) without prejudice because the claims, as pled, were barred by the Eleventh Amendment.  (ECF No. 8)  The Court permitted Plaintiff to file an amended complaint and ordered that such pleading "be brought against proper state officials, [] be supported by factual allegations that demonstrate an ongoing violation of federal law [to support the claim for injunctive relief], and [] be presented to the Court consistent with the requirements of Rule 11(b) of the Federal Rules of Civil Procedure."  *Id*.  The Court also granted Plaintiff's motion to proceed *in forma pauperis*. *Id*.

On May 27, 2015, Plaintiff filed her first amended complaint.  (ECF No. 16)  Plaintiff then moved to amend her complaint on September 12, 2015.  (ECF No. 31)  In its order granting the motion, the Court instructed Plaintiff that the amended complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to Relief" and that failure to comply could result in dismissal.  (ECF No. 36 quoting Fed. R. Civ. P. 8).  On October 24, 2015, Plaintiff filed not one, but two amended complaints. (ECF No. 37)  The Court ordered that the Plaintiff file a single complaint, which she later did.  (ECF No. 87)  That document became the operative complaint.

The Defendants have moved to dismiss the Complaint for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), failure to state a claim under Fed. R. Civ. P. 12(b)(6), and failure to comply with this Court's orders dated April 3, 2015 and January 22, 2016, under Fed. R. Civ. P. 12(e).

## II.   Factual Allegations

Plaintiff makes the following factual allegations, which the Court assumes to be true:

### A.   DSS Allegations

In 1995, Plaintiff moved to Connecticut to complete the last 18 months of a physical therapy program at Sacred Heart University.  (Compl. at 8.)  Plaintiff had been a victim of domestic violence and had been homeless during the nine months before her move.  *Id*. at 35. She enrolled in the physical therapy program in January 1995.  *Id*. at 8.  DSS told Plaintiff to "put her education on hold until September so she could get her housing situation" stable.  *Id*.  at 8.  In September 1995, she attempted to enroll in the same physical therapy program.  *Id*.  But DSS told Plaintiff that if she enrolled, DSS would revoke her "Section VIII housing, food stamps and energy assistance."  *Id*.  In Plaintiff's view, DSS "took advantage of her."  *Id*. at 35.  DSS denied her the opportunity to pursue her education and threatened to take away her welfare benefits when she was "[under] duress, stress[ed] [and] homeless[]."  *Id*.  Plaintiff further alleges that between 1995-1998, DSS did not accommodate her "hidden disabilities" and Plaintiff was discriminated against on the basis of those "hidden disabilities."  *Id*. at 36-38.

In 2012, Plaintiff appeared in an administrative hearing to contest a lien levied on her real property by DSS.  *Id*. at 34, 38.  She had "repeatedly wrote and called and emailed DSS to inform them that she needed assistance to present her case."  *Id*. at 38.  DSS did not provide her any accommodation.  *Id*. at 38.  She alleges that DSS violated her rights under the Americans with Disabilities Act (the "ADA") by failing to "provide advocacy and leniency during her fair hearing, shutting down her fair hearing prematurely [and] not providing various other amenities and modifications as prescribed by law."  *Id*. at 34, 38, 40.   She asserts that the hearing officer "could have accommodated [her] disabilities" by "ask[ing] her if she needed time to compose

herself." *Id.* at 40.  Plaintiff believes "[she] did not receive equal access to the Fair

Hearing/Court Process." *Id.*[2]

**B.  DCF Allegations**

In 1996, "a central registry for [child] [a]buse and [n]eglect was created" and was to be

overseen and maintained by the Commissioner of DCF.  *Id.* at 9, 11.  In 1997, DCF placed

Plaintiff's name on the state abuse and neglect registry.  *Id.* at 10.  Plaintiff claims that DCF

should not have placed her name on the list because the neglect charges against her were

dismissed as unsubstantiated.  *Id.*  In fact, the judge who dismissed the neglect charges

admonished DCF for filing charges against her in the first place.  *Id.* at 7. She further asserts that

DCF failed to notify her that she had been placed on the registry, as required by law.  *Id.* at 10-

11.  Consequently, Plaintiff was unaware that she was listed on the registry until 2012, when she

applied for a volunteer position and the prospective employer notified her of the reason for

denying her application.  *Id.* at 12.  Plaintiff's name has been removed from the list, but that

removal comes too late for her.  *Id.*  Plaintiff claims that the 15 years that her name was on the

registry amounted to defamation, slander, and libel.  *Id.* at 12, 54, 63-64.  The false listing

prevented her from obtaining employment, forcing her to rely on public assistance programs.  *Id.*

---

[2] The Court takes judicial notice that the Connecticut courts earlier rejected Plaintiff's challenge
to the lien DSS recorded on her property following the administrative hearing about which
Plaintiff complains in this case.  *Joan Kloth-Zanard v. Dep't of Social Svcs.*, 53 Conn. Supp. 363
(Conn. Super. 2014), *aff'd*, 157 Conn. App. 366 (2015), *cert. denied*, 319 Conn. 923 (2015).  *See
Liberty Mutual Ins. Co. v. Rotches Pork Packers, Inc.,* 969 F.2d 1384, 1388 (2d Cir.1992) ("A
court may take judicial notice of a document filed in another court not for the truth of the matters
asserted in the other litigation, but rather to establish the fact of such litigation and related
filings.") (internal citation and quotation marks omitted).

### III.    Legal Standards

#### A.  Rule 12(b)(1)

A "case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Nike, Inc. v. Already, LLC*, 663 F.3d 89, 94 (2d Cir. 2011).  The "plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Luckkett v. Bure*, 290 F.3d 493, 497 (2d. Cir. 2002).  "In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court . . . may refer to evidence outside the pleadings." *Makaraova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  The court construes the complaint liberally and accepts all factual allegations as true.  *Ford v. D.C. 37 Union Local 1549*, 579 F.3d 187, 188 (2d Cir. 2009).

#### B.  Rule 12(b)(6)

In considering a motion to dismiss under Rule 12(b)(6), a court construes the complaint liberally, "accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002).  A court may allow a case to proceed only if the complaint pleads "enough facts to state a claim to relief that is plausible on its face." *Id.*  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009) (citing *Twombly*, 550 U.S. at 554-55). When a plaintiff submits a complaint *pro se*, the court must construe the allegations liberally, raising "the strongest arguments [they] suggest[]." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007).  A *pro se* plaintiff, however, still must meet the standard of facial plausibility.

*See Hogan v. Fischer*, 738 F. 3d 509, 515 (2d Cir. 2013) ("[A] *pro se* complaint must state a plausible claim for relief.") (citing *Harris v. Mills*, 572 F.3d 66, 73 (2d Cir. 2009)).

## IV. Discussion

### A.  Federal Claims

#### i.  Section 1983 Claims

The Court construes Plaintiff's complaint to assert several claims under Section 1983 related to (i) DSS's alleged violation of her education rights under the "Welfare Reform [A]ct and Domestic Violence Laws"  and (ii) DCF's placement of Plaintiff's name on the state abuse and neglect registry. (Compl. at 46-48; 49-52; 64-69; 71-72.)  She asserts Violation of Educational Rights (Count 2), Violation of Fifth and Fourteenth Amendment Due Process Rights (Count 5), Violation of Sixth Amendment Right to Confront a Witness (Count 6), and Perjury under § 1621 (Count 10).

#### a.  Eleventh Amendment

All of Plaintiff's Section 1983 claims against the DCF and the DSS, and all of her Section 1983 claims for money damages against the individuals sued in their official capacities, are barred by the Eleventh Amendment.  The Eleventh Amendment bars this Court from exercising jurisdiction over suits against State agencies seeking either money damages or injunctive relief, absent consent by the State or Congressional abrogation of Eleventh Amendment immunity. *McGinty v. New York*, 251 F.3d 84, 91 (2d Cir. 2001); *see also Colapiertro v. Dep't of Motor Vehicles*, No. 3:08-CV-00238, 2008 WL 4298374, at *2 (D. Conn.  Sept. 17, 2008) ("[A] suit for recovery of money damages may not be maintained against the state itself, or against any agency or department of the state, unless the state has waived its sovereign immunity under the Eleventh Amendment."); *Atlantic Healthcare Benefits Trust v. Googins*, 2 F.3d 1, 4 (2d Cir. 1993)

(Eleventh Amendment "affects [court's] subject matter jurisdiction.").  Furthermore, a suit against an individual in his official capacity is for Eleventh Amendment purposes a suit against the state.  *Brandon v. Holt*, 469 U.S. 464, 471 (1985) ("[A] judgment against a public servant 'in his official capacity' imposes liability on the entity that he represents . . .").  Congress did not abrogate Eleventh Amendment immunity in enacting Section 1983, *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 69 (1989), and the State of Connecticut did not consent to be sued on these claims.  Thus, Plaintiff's Section 1983 claims against DSS and DCF, and all of her claims for money damages against Bremby in his official capacity and Graham-Leichner in his official capacity, are dismissed on Eleventh Amendment grounds.  Her claims for injunctive relief, which appear to relate only to her ADA claim, are discussed below.

### b.  Individual Capacity Defendants

"It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under §1983."  *Shomo v. City of New York*, 579 F.3d 176, 184 (2d Cir. 2009).  Plaintiff fails to plead facts showing personal involvement of any of the defendants named in their individual capacities in any conduct that might constitute a violation of federal law.  The complaint does not allege that Malloy did or did not do anything.  As for Lupke, Norvig, and Graham-Leichner, the complaint alleges only that they "are or were employees of [DCF]" whose names were "found in DCF records." (Compl. at 5.)   As for Bremby and Katz, it alleges only that Plaintiff sent them letters and made phone calls to them regarding "the status of [her] request to sue DSS and DCF."  (*Id.* at 6).   None of this conduct is actionable under federal law, and Plaintiff has thus failed to plead a Section1983 claim against any of the individual defendants.  *See Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) ("The personal involvement of a supervisory defendant may be shown

by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.").

### c.   Statute of limitations

As the Defendants point out, much of the conduct alleged by Plaintiff stems from the 1990s.  For example, she alleges that in 1995 DSS denied her "educational rights" under the "Welfare Reform Act" and "Family Violence Laws" by threatening her with the loss of Section 8 housing, food stamps, and energy assistance if she continued her studies in physical therapy; and that DCF "falsely" listed her on the child abuse and neglect registry in 1997 after the state court dismissed all charges of neglect against her that same year.  (Compl. at 8, 10.)  With respect to her claims against DCF, however, Plaintiff alleges she did not learn that DCF had continued to list her on the neglect and abuse registry until June 2012, when a prospective employer notified her of this.  *Id*. at 12.  Although Section 1983 claims "filed in the District of Connecticut . . .[are] subject to a three year statute of limitations," *Walker v. Jastremski*, 159 F.3d 117, 119 (2d Cir. 1998), federal accrual rules apply.  *Leon v. Murphy*, 988 F.2d 303, 309 (2d Cir. 1993).  Under federal accrual rules in Section 1983 cases, a cause of action accrues when a plaintiff knew or had reason to know of the facts underlying the cause of action.  *Id.* ("[U]nder federal law, a cause of action accrues when the plaintiff knows or has reason to know of the injury that is the basis of the action.")   Here, Plaintiff alleges she did not learn that her name had been placed

(or that her name continued to be placed) on the registry until June 2012. Thus, that claim is not

time-barred. To the extent any of her Section1983 claims are based on actions of the DSS in

1995 amounting to a "deni[al] of her educational rights" (Compl. at 14), however, those claims

are time-barred as the complaint pleads no facts suggesting Plaintiff was unaware that "DSS told

her to put her education on hold" or that she was "threatened by DSS with loss of her Section [8]

housing. . . ." *Id*. at 8-9, 47. Nor does she plead any other facts to suggest that tolling applies to

these allegations.

#### d. *Violation of Educational Rights (Count 2)*

Plaintiff alleges that DSS violated her "rights to an education under the Welfare Reform

[A]ct and [d]omestic [v]iolence [l]aws." *Id*. at 46. It is not clear which laws she is invoking

here, although the Complaint suggests that this claim is based at least in part on state law.

(Compl. at 9 (referring to "Summary of Family Violence Laws by Sandra Norman-Eady,

October 2, 2009, 2009-R-0349 An Act Concerning Welfare Reform and the Expenditures of the

Department of Social Servies (PA 97-2, June 18 Special Session)"); *see* SUMMARY OF FAMILY,

VIOLENCE LAWS, https://www.cga.ct.gov/2009/rpt/2009-R-0349.htm (last visited on September

28, 2016). Violations of state law cannot ground an action under Section 1983. *Pollnow v.

Glennon*, 757 F.2d 496, 501 (2d Cir. 1985) ("[A] violation of state law is not cognizable under

[Section] 1983."). Plaintiff otherwise cites no provision of federal welfare law that DSS or any

other defendant violated in this case. This count does not plead a cognizable claim.

#### e. *Sixth Amendment Right to Confront a Witness (Count 6)*

Plaintiff alleges that her Sixth Amendment right to confront a witness was violated at the

2012 hearing because she did not have an opportunity to confront a DSS caseworker. (Compl. at

52.) The Sixth Amendment, however, does not apply to civil cases. *Turner v. Rogers*, 564 U.S.

431 ("[T]he Sixth Amendment does not govern civil cases."); *Reilly v. Leonard*, 459 F. Supp.

291, 301 (D. Conn. 1978) ("[The] Sixth Amendment is specifically limited to criminal

prosecutions.").  Count Six is dismissed with prejudice.

### f.  *Violation of Fifth and Fourteenth Amendments (Count 5)*

Plaintiff fails to state a claim under the Fifth Amendment because she does not allege any

deprivation of her rights by the federal government.  *Lopez v. Lantz*, No. 3:09-CV-22 CSH, 2010

WL 965747, at *4 (D. Conn. Mar. 12, 2010) ("The Fifth Amendment applies to the federal

government, not to the states.").  Plaintiff's claim for violation of the Fifth Amendment is

dismissed with prejudice.

As for her Fourteenth Amendment claim, Plaintiff alleges that "DCF placed [her name]

falsely on the abuse and neglect registry," failed to remove it, and failed to notify her of the

listing for fifteen years.[3]  (Compl. at 10-11, 50.)  DCF did not remove Plaintiff's name though a

judge dismissed all neglect charges against her in 1997 and admonished DCF for charging her in

the first place.  *Id*. at 6-8, 10.  Plaintiff alleges facts suggesting that these actions harmed her

reputation, prevented her from gaining employment, and resulted in other harm.  More

specifically, she alleges that the employment opportunities she sought – including positions with

state agencies that involved working with families and children and a Guardian Ad Litem

appointment– were denied her due to the fact that those employers relied on the abuse and

neglect registry in the hiring process.  *Id*. at 59, 66, 69.  Taken as true and construed liberally and

---

[3] The Commissioner of DCF is required to "maintain a registry of the Commissioner's findings
of abuse or neglect of children. . ." Conn. Gen. Stat. §17a-101(k).  "Upon the issuance of a
recommended finding that an individual is responsible for abuse or neglect of a child . . .the
commissioner shall provide notice of the finding. . .to the individual," including information
about the listing on the registry, the potential adverse consequences of such a listing, and appeal
rights.  *Id*. §17a-101(k)(b).  The appeal rights include a hearing and a further appeal through the
state court system.  *Id*. §17a-101k(d).

in her favor, these allegations are sufficient to state a claim for violation of her due process rights under a "stigma-plus" theory, because they suggest that her improper placement on the registry legally barred her from the type of employment she sought.

"To formulate a claim under the Due Process Clause of the Fourteenth Amendment, a plaintiff must demonstrate that he or she possesses a constitutionally protected interest in life, liberty, or property, and that state action has deprived him or her of that interest." *Valmonte v. Bane*, 18 F.3d 992, 998 (2d Cir. 1994). "Although damage to one's reputation is not by itself sufficient to invoke the procedural protection of the Due Process Clause, [a plaintiff] can demonstrate infringement of a protected liberty interest by showing that inclusion of her name [on a state child abuse registry] resulted in 'stigma plus.'" *McCaul v. Ardsley Union Free Sch. Dist.*, 514 F. App'x 1, 3–4 (2d Cir. 2013). To state a "stigma plus" claim, the "stigma" "resulting from the defamatory character of the posting," *Paul v. Davis*, 424 U.S. 693, 708-09, (1976), must be combined with a "state-imposed alteration in [plaintiff's] legal status." *McCaul*, 514 F. App'x at 4. In *Valmonte*, the Second Circuit held that there was "stigma-plus" where the placement of a plaintiff's name on New York's child abuse registry not only defamed her but placed a "tangible burden on her employment prospects." *Valmonte*, 18 F.3d at 1001. Under New York's statutory scheme then in effect, child care providers were required to consult the child abuse registry before hiring prospective employees, and thus, "*by operation of law*, [the plaintiff's] potential employers [would] be informed specifically about her inclusion on the Central Register and [would] therefore choose not to hire her." *Id.* (emphasis in original). Connecticut law similarly requires that child care agencies conduct background checks on prospective employees, including consulting the state's abuse and neglect registry. According to one statutory provision:

> The commissioner, within available appropriations, shall require each prospective employee of a child care center or group child care home in a position requiring the

> provision of care to a child to submit to state and national criminal history records checks
> . . . The commissioner shall also request a check of the state child abuse registry.

Conn. Gen. Stat. § 19a-80(c).  Construed liberally, Plaintiff's allegations that DCF falsely listed

her name on the registry, and failed to notify her of the listing, and that this conducted prevented

her from securing employment in the child care sector because prospective employers had to

check the registry are sufficient to state a "stigma plus" claim.  (Compl. at 55, 59, 66.)

        As discussed above, however, there are no allegations regarding whether any of the

individual defendants were responsible for wrongly listing her name on the registry or failing to

notify her of the listing.   Plaintiff does plead that the Commissioner of DCF has a duty to

maintain the registry in accordance with certain standards, and that "it would have been the

caseworker['s job to not put the Plaintiff's names on the list or if they had, to take them off

immediately after adjudication of the plaintiff as a fit parent and all charges dismissed,

withdrawn and unsubstantiated on November 18, 1997."  (Compl. at 11, 71.)  But she does not

allege that Katz was the DCF Commissioner at the relevant time or that any of the individual

defendants named as current or former DCF employees (the "DCF employees") were employed

by DCF when her name was placed on the registry.[4]  Nor does she allege that Katz created a

policy or custom that led to the violation of her constitutional rights, that Katz or any of the DCF

employees knew or should have known of the judge's actions in 1997, that any of those

defendants knew or should have known that Plaintiff's name had been errantly placed or left on

the registry, or that any of them failed to notify her of the listing.  In short, as noted above, there

are no allegations satisfying the "personal involvement" requirement for Section 1983 claims.

*See Colon*, 58 F.3d 865 at 873.  This claim must therefore be dismissed.

---

[4] Her complaint does allege that a DCF worker was aware that the neglect petition against
Plaintiff was withdrawn and the case closed, but that worker is not named as a defendant.
(Compl. at 55.)

Nonetheless, Plaintiff may be able to allege facts identifying individuals who were personally involved in placing her name on the registry, failing to remove it, and failing to notify her of the listing, or who knew of this conduct and failed to address it.  Further, as discussed above, this claim is not time-barred.   For these reasons, the Court dismisses this claim without prejudice, and will give Plaintiff one opportunity to replead this claim in accordance with the instructions in the Conclusion below.

### g.   Perjury under § 1621 *(Count 10)*

Plaintiff claims that placement of her name on the abuse and neglect registry constituted perjury as defined in 18 U.S.C. § 1621.  (Compl. at 63-64.)  Section 1621, however, is a criminal statute.  18 U.S.C. § 1621.  The Court is not aware of any authority, and Plaintiff provides none, that would allow a private individual to enforce a criminal statute.  *See Turner v. Boyle*, No. 3:13-cv-616 SRU, 2015 WL 4393005, at \*25 (D. Conn. July 15, 2015) (citing *Conn. Action Now, Inc. v. Roberts Plating Co.*, 457 F.2d 81, 86–87 (2d Cir. 1972)).

### ii.   *Violation of Civil Rights under § 1985 (Count 7)*

In Count 7, Plaintiff alleges that "[t]he state and [its] agency," apparently referring to DSS, "conspired to interfere with Plaintiff's civil rights" under 42 U.S.C. § 1985(3).  (Compl. at 52.) This claim appears to be based on DSS's actions in 1995, "when they refused to allow her to" complete her studies in physical therapy and "threatened to revoke all of her housing assistance and food assistance" if she attended school.   (*Id*. at 53.)

To state a conspiracy claim under § 1985(3), Plaintiff must allege facts suggesting: "(1) the existence of a conspiracy (2) for the purpose of depriving [her] of the equal protection of the laws; (3) an overt act in furtherance of the conspiracy; and (4) a deprivation of [her] right or privilege as a citizen of the United States." *Thomas v. Roach,* 165 F.3d 137,146 (2d Cir.1999).

A plaintiff's conspiracy allegation "must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Webb v. Goord*, 340 F.3d 105, 110–11 (2d Cir. 2003). Plaintiff does not allege any facts suggestive of a conspiracy. There are no allegations that "[Defendants] entered into an agreement. . . to achieve [an] unlawful end." *See Webb*, 340 F.3d at 110-11. Plaintiff's conspiracy claim must, therefore, fail. *See Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir.1997) (dismissal of "conclusory, vague or general allegations of conspiracy to deprive a person of constitutional rights" is proper). Further, this claim is time-barred for the same reasons that many of the Section 1983 allegations are time-barred. *See Cornwell v. Robinson*, 23 F.3d 694, 703 (2d Cir. 1994) (applying three-year limitations period to claims under Section 1985).

       iii.    *ADA and Rehabilitation Act Claims (Count 1)*

The Plaintiff has brought claims for violation of Title II of the ADA and Section 504 of the Rehabilitation Act. These claims focus on the DSS's alleged failure to afford her accommodations in a 2012 administrative hearing in which she contested a lien levied on her real property by DSS. *Id*. at 34, 38; *see also* note 2, supra.[5] The Defendants argue that the Eleventh Amendment bars these claims and that Plaintiff has failed to state a claim under both the ADA and the Rehabilitation Act.

As a threshold matter, Title II of the ADA and the Rehabilitation Act do not provide for individual capacity suits against state officials. *Garcia v. S.U.N.Y, Health Sciences Ctr. Of*

---

[5] To the extent that Plaintiff's ADA and Rehabilitation Act claims are also based on DSS's alleged conduct in 1995 (*see* Compl. at 35), they are time-barred. *See Keitt v. New York City*, 882 F. Supp.2d 412, 451 (applying state statute of limitations applicable to personal injury actions to claims under Title II of ADA); *Morse v. Univ. of Vermont*, 973 F.2d 122, 127 (2d Cir. 1992) (applying state statute of limitations applicable to person injury actions to claims under Section 504); Conn. Gen. Stat. § 52-577 (three-year statute of limitations applicable to tort claims).

*Brooklyn*, 280 F.3d 98, 107 (2001) ("Insofar as Garcia is suing the individual defendants in their individual capacities, neither Title II of the ADA nor §504 of the Rehabilitation Act provides for individual capacity suits.").  To the extent Plaintiff is suing any of the Defendants in their individual capacities for violations of Title II of the ADA or the Rehabilitation Act, those claims are dismissed with prejudice.

            a. Eleventh Amendment

As explained above, the Eleventh Amendment bars suits against a State or one of its agencies or departments, regardless of the type of relief sought unless (i) the State consents to the suit, *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)), or (ii) Congress abrogates Eleventh Amendment immunity under Section 5 of the Fourteenth Amendment, *id* at 99.  "[T]o determine whether [Congress] has done so in any given case, [a court] must resolve two predicate questions: first, whether Congress unequivocally expressed its intent to abrogate that immunity; and second, if it did, whether Congress acted pursuant to a valid grant of constitutional authority." *Tennessee v. Lane*, 541 U.S. 509, 517 (2004)(internal quotation marks omitted).

Congress unequivocally expressed its intent to abrogate the States' Eleventh Amendment immunity when a State is sued under Title II of the ADA.  42 U.S.C. §12202 ("A State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in [a] Federal or State court of competent jurisdiction for a violation of this chapter.").  Further, Congress acted under a valid grant of constitutional authority when it sought to abrogate the States' Eleventh Amendment immunity under Title II where a plaintiff invokes Title II to challenge physical access to state courts. *Lane*, 541 U.S. at 530 ("[W]e find that Title II unquestionably is valid §5 [of the Fourteenth Amendment] legislation as it applies to the class of

cases implicating accessibility of judicial services. . .").[6] In addition, the Supreme Court held in

*United States v. Georgia*, 546 U.S. 151 (2006), that "insofar as Title II creates a private cause of

action for damages against the States for conduct that *actually* violates the Fourteenth

Amendment, Title II validly abrogates state sovereign immunity." *Id.* at 159.  The Second

Circuit has interpreted *Georgia* to create a three-step process for determining whether Congress

has validly abrogated a state's Eleventh Amendment immunity from suit for a particular Title II

claim:

> "[A court must] determine ..., on a claim-by-claim basis, (1) which aspects of the State's
> alleged conduct violated Title II; (2) to what extent such misconduct also violated the
> Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not
> violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign
> immunity as to that class of conduct is nevertheless valid. . . . Thus, if a plaintiff cannot
> state a Title II claim, the court's sovereign immunity inquiry is at an end."

 *Mary Jo C. v. New York State & Local Retirement System*, 707 F.3d 144, 152 (2d Cir. 2013)

(internal quotation marks and citation omitted).  Thus, this Court's first task in determining

whether the Eleventh Amendment bars Plaintiff's Title II claims is to determine whether her

allegations state a violation of that statute.

---

[6] The Court notes that the Eleventh Amendment is not a bar to the claim under Section 504 of the
Rehabilitation Act, which was enacted under Congress' Spending Clause authority.  *Zahran ex
rel. Zahran v. New York Dep't. of Educ.*, 306 F. Supp.2d 204, 310 n. 2 (N.D.N.Y. 2004).  The
Court also assumes, without deciding, that Plaintiff's claim that the DSS failed to extend her
reasonable accommodations in an administrative hearing to challenge a lien placed by DSS on
her property either constitutes a claim "implicating accessibility of judicial services" or would be
afforded the same treatment as such a claim for purposes of the Eleventh Amendment.  The
Plaintiff's allegations suggest that she invoked the judicial process by initially bringing her
challenge at the state agency level and then proceeding to court under the state's administrative
appeal scheme.  *See Kloth-Zanard v. Dep't of Social Svcs.*, 53 Conn. Supp. at 364 (noting that
Ms. Kloth-Zanard appealed DSS's decision regarding the lien under Conn. Gen. Stat. § 4-183).

b.      Title II of the ADA and Section 504 of the Rehabilitation Act[7]

Title II of the ADA provides in relevant part that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  A "qualified individual with a disability" is "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity."  42 U.S.C. § 12131(2). "The term 'disability' means, with respect to an individual—(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment ...."  42 U.S.C. § 12102(1).  "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working."  *Id.* at § 12102(2)(A).

Plaintiff makes general allegations that she is presently "disabled with PTSD, [a]nxiety, [s]tress and [d]egenerative joint disease."  (Compl. at 67.)   She further alleges that she is "legally disabled [and] on [s]ocial [s]ecurity benefits" and has suffered from "hidden disabilities associated with PTSD, [s]tress and anxiety."  *Id*. at 35-36.  There are no allegations, however, that any of her major life activities were or are impacted as a consequence of these conditions.

---

[7] Title II and the Rehabilitation Act impose essentially the same standards, and courts generally analyze the claims under the two statutes together.  *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003); *Rodriguez v. City of New York*, 197 F.3d 611, 618 (2d Cir. 1999).

Indeed, Plaintiff alleges that her placement on the neglect and abuse registry, rather than her "hidden disabilities," prevented her from obtaining work.  *Id.* at 10; 64; 66. To be sure, the 2009 amendments to the ADA broadened the definition of "disability," and subsequent regulations make clear this requirement is not a demanding standard.  *See, e.g.*, 29 C.F.R §1630.2(j)(1)(i) ("[s]ubstantially limits is not meant to be a demanding standard").   Nonetheless, the requirement that the impairment "substantially limit" a major life activity still requires factual allegations showing that the impairment "substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population."  29 C.F.R §1630.2(j)(1)(ii). Plaintiff has failed to satisfy even this relaxed standard, as her complaint does no more than identify her impairments in conclusory fashion, and fails to plead facts showing that they impacted a major life activity at all.

Furthermore, Plaintiff has "not alleged sufficient facts to demonstrate that the [defendants] were aware that Plaintiff was disabled." *See Bou v. New Jersey*, No. 11-6356 JEI/JS, 2012 WL 1600444, at *3 (D.N.J. May 7, 2012).  Plaintiff's complaint frequently describes her disabilities as "hidden."  (*See, e.g.*, Compl. at 35.)  And although Plaintiff alleges she "repeatedly wrote and called and emailed DSS to inform them that she needed assistance," (Compl. at 38), she does not allege in any of those communications that she "informed [individual Defendants] that [she] even had a disability" *See Cotz v. Mastroeni*, 476 F.Supp.2d 332, 370 (S.D.N.Y.2007); *see also Goonewardena v. New York*, No. 05 CIV. 8554, 2008 WL 4090467, at *10 (S.D.N.Y. Aug. 26, 2008) (finding that there was not awareness of plaintiff's disability because "[n]o evidence [w]as submitted showing that defendants had knowledge of a "record of ... [plaintiff's] impairment."); *Chenari v. George Washington Univ.*, No. CV 14-0929 (ABJ), 2016 WL 1170922, at *13 (D.D.C. Mar. 23, 2016) ("[F]or this causal link to be shown

the [defendant] must have acted with an awareness of the disability itself, and not merely an awareness of some deficiency in the [plaintiff's] performance that might be a product of an unknown disability."); *DeLeon v. City of Alvin Police Dep't*, Civ. No. H-09-1022, 2011 WL 43432, at *4 (S.D. Tex. Jan. 6, 2011) ("Rather, the general rule under the ADA is that a plaintiff must show that the [defendant] knew not only of the [plaintiff's] disability, but also of the physical or mental limitations resulting therefrom.") (internal quotations and citation omitted).

Plaintiff also fails to plead facts showing that DSS failed to make a reasonable accommodation at her 2012 hearing.  Plaintiff alleges that DSS failed to provide a reasonable accommodation in two respects.  First, DSS did not provide her a lawyer.  (Compl. at 38, 40.) Second, DSS did not afford her "leniency" during the proceeding, by which Plaintiff apparently means that the hearing officer "could have … asked her if she needed time to compose herself." *Id*. at 34, 40.   But she does not plead any facts suggesting that "as a practical matter," she was "denied meaningful access to services, programs or activities to which [she] was legally entitled."  *Wright v. New York State Dep't of Corr.*, No. 15-3168-CV, 2016 WL 4056036, at *4 (2d Cir. July 29, 2016) (internal quotation marks and citation omitted).  Although the statute governing the hearing at DSS allowed her to appear with counsel, Conn. Gen. Stat. § 17b-60 ("The aggrieved person … may be represented by an attorney or other authorized representative."), she apparently chose not to do so– either because she could not afford to hire a lawyer or because she did not want to do so at the time.  Plaintiff cites no authority, and the Court is unaware of any, that obligated DSS to appoint and pay for a lawyer to represent her at the hearing.  Several courts have rejected the notion that public agencies, including courts, are required to appoint counsel for persons with disabilities. *See, e.g.*, *Douris v. New Jersey*, 2012 WL 4503272 *3 (3d Cir. Oct. 2, 2012) ("The amended complaint alleges that the New Jersey

courts failed to provide him with legal counsel, but there is no requirement under the ADA that courts provide legal counsel for a person with disabilities."); *Pinson v. Equifax Credit Info. Servs., Inc.*, 316 F. App'x 744, 749 (10th Cir. 2009) (concluding that there was "no support" for the plaintiff's assertion that the "ADA and Rehabilitation Act required the court to appoint counsel."); *Johnson v. City of Port Arthur*, 892 F. Supp. 835, 839 (E.D. Tex. 1995) ("An ADA plaintiff has no absolute right to appointed counsel."); *see also Pavel v. Plymouth Mgmt. Grp., Inc.,* 198 F. App'x 38, 41 (2d Cir. 2006) (holding that appellant did not have a "right to assistance of counsel" for claims brought under the ADA and the Age Discrimination in Employment Act).

With regard to the alleged denial of "leniency" – the only specification of which is that the hearing officer failed to ask her if she needed more time – the plaintiff pleads no facts suggesting a nexus between this requested accommodation and her alleged disability. *See Rogers v. Roosevelt Union Free Sch. Dist.*, 553 F. App'x 88, 89 (2d Cir. 2014).

In any event, a review of the Connecticut Superior Court decision on the Plaintiff's appeal of the DSS's decision belies the suggestion that she was "denied meaningful access" to a hearing in which to challenge the DSS lien. *See Dep't of Soc. Servs*., 53 Conn. Supp. at 369-71. The decision shows that she advocated on her own behalf at the hearing before the DSS hearing officer, introducing evidence into the record and making legal arguments about her status as a victim of domestic violence and the statute of limitations. *Id*.  And after the hearing officer ruled against her, she received an opportunity to test his conclusions in an administrative appeal to the Connecticut Superior and Appellate Courts. *Id*.; *Kloth-Zanard v. Dep't of Soc. Servs*., 157 Conn. App. 366, 367, 115 A.3d 531 (2015).  There are no facts pled in the complaint – and no suggestion in the decisions describing the state court proceedings – showing that Plaintiff was deprived of "meaningful access" to the administrative and judicial processes due to the failure of

the DSS to provide her with counsel or as a result of the hearing officer's failure to ask her if she needed time to compose herself.  Plaintiff has thus failed to plead a claim under Title II of the ADA or the Rehabilitation Act.

### B.  Injunctive Relief

In Plaintiff's response to Defendants' motion to dismiss, Plaintiff claims she was unaware she had to re-plead her requests for relief from previous versions of her complaint in her operative complaint.  (ECF No. 102 at 6)  Because she is proceeding *pro se*, the Court will consider her requests for non-monetary relief from her original complaint, i.e., "rescinding all demands for repayment of supposedly owed monies to DSS for states assistance of the plaintiffs" and "[a] clearing of all charges and demands for repayment such that the existing charges be wiped clear and no future charges allowed." (ECF No. 1 at 14)  To the extent these claims for relief seek prospective injunctive relief, they would not be barred by the Eleventh Amendment because Plaintiff has named the Commissioner of DSS as a defendant.  *State Employees Bargaining Agent Coal. v. Rowland*, 494 F.3d 71, 95 (2d Cir. 2007) ("Under the well-known exception to this rule first set forth in *Ex Parte Young*, 209 U.S. 123, 28 S. Ct. 441, 52 L.Ed. 714 (1908), however, a plaintiff may sue a state official acting in his official capacity—notwithstanding the Eleventh Amendment—for prospective injunctive relief from violations of federal law.") (internal quotation marks and citation omitted).  These requests for relief relate to Plaintiff's claims against DSS and, specifically, to her claim that DSS violated her rights under the ADA during the hearing concerning the lien on her property.  Because she has failed to plead a violation of the ADA and Rehabilitation Act, these requests for relief are dismissed.

### C.  State Law Claims (Counts 3, 4, 8, and 9)

Plaintiff's claims for breach of fiduciary duty (Counts 3 and 4), defamation (Count 8), and slander and libel (Count 9) arise under state common law.  Because the Court is dismissing all of the federal claims, it declines to exercise its supplemental jurisdiction over Plaintiff's state law claims.  28 U.S.C. §1367(c)(3); *Astra Media Grp., LLC v. Clear Channel Taxi Media, LLC*, 414 Fed.Appx. 334, 337 (2d Cir. 2011) ("[W]e have generally held that where all the federal claims have been dismissed at a relatively early stage, the district court should decline to exercise supplemental jurisdiction over pendent state-law claims.").  The Plaintiff may, if she wishes, pursue these claims in state court, except that she may replead them in this Court if she can plead a plausible Fourteenth Amendment claim in accordance with the Court's instructions in the Conclusion.

### D.  Remaining Counts (Counts 11, 12, 13, 14, 15, and 16)

The remaining counts –Loss of Liberty (Count 11), Loss of Reputation (Count 12), Mental Pain and Suffering (Count 13), Loss of Employment and Earning Capacity (Count 14), Loss of Enjoyment of Life (Count 15), and Right to Punitive and Other Damages (Count 16) – merely specify the types of damages Plaintiff claims to have incurred and do not plead cognizable claims at all.  They are dismissed with prejudice.

## V. Conclusion

For the foregoing reasons, the Court orders as follows:

1.  The claims for Violation of the ADA and Section 504 of the Rehabilitation Act (Count 1), Violation of Educational Rights (Count 2), Violation of Fifth Amendment Due Process Rights (Count 5), Violation of Sixth Amendment Right to Confront a

Witness (Count 6), Violation of Civil Rights under §1985 (Count 7), and Perjury under § 1621 (Count 10) are dismissed with prejudice.

2.  The Fourteenth Amendment due process claim based on the listing on the DCF abuse and neglect registry is dismissed without prejudice.  Plaintiff may replead this claim – *and only this claim* – within 30 days of this order consistent with the requirements of Rule 11(b) of the Federal Rules of Civil Procedure.   Specifically, Plaintiff must specifically identify defendants allegedly responsible for placing her name on the abuse and neglect registry or not removing her name from the abuse and neglect registry.  Further, she must plead intentional conduct by such individuals that gives rise to a Section1983 violation.  *Burks v. Nassau Cty. Sheriff's Dep't*, 288 F. Supp. 2d 298, 301 (E.D.N.Y. 2003) ("Absent sufficient factual allegations that the intentional . . . conduct of a state official caused the plaintiff's injury, a complaint is not cognizable under Section 1983.") (citing *Daniels v. Williams*, 474 U.S. 327, 328-31, (1986)). Plaintiff is reminded that the pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8, and she is also required to comply with Rule 11(b) of the Federal Rules of Civil Procedure.  To comply with this order, Plaintiff must—if she wishes to proceed in this lawsuit—file within 30 days an amended complaint that satisfies the requirements of this paragraph and does not replead claims this Court has dismissed with prejudice (see paragraphs 1 and 4 of this Conclusion).

3.   The claims for Violation of Fiduciary Duties (Counts 3 & 4), Defamation (Count 8), and Slander and Libel (Count 9) are dismissed without prejudice to being renewed in

state court, except that if Plaintiff can successfully plead a Fourteenth Amendment claim (see paragraph 2 above), she may renew these claims in this Court.

4.  The claims for Loss of Liberty (Count 11), Loss of Reputation (Count 12), Mental Pain and Suffering (Count 13), Loss of Employment and Earning Capacity (Count 14), Loss of Enjoyment of Life (Count 15), and Right to Punitive and Other Damages (Count 16) are dismissed with prejudice.

IT IS SO ORDERED.

/s/ _____
Michael P. Shea, U.S.D.J.

Dated:        Hartford, Connecticut
              September 29th, 2016