```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT
```

JOAN T. KLOTH-ZANARD,              :
                                   :
    Plaintiff,                    :
                                   :
    v.                            :      CASE NO.  3:15CV124(DFM)
                                   :
DEPARTMENT OF SOCIAL SERVICES,     :
et al.,                            :
                                   :
    Defendants.                   :

## RULING ON MOTIONS TO DISMISS

The plaintiff, Joan T. Kloth-Zanard, brings this § 1983 action against Connecticut Department of Children and Families ("DCF") employees Jean Norvig, Christine Lupke, and Carl Graham-Leichner, alleging that they improperly placed her on DCF's child abuse and neglect registry in 1997 and failed to give her notice and an opportunity to challenge her placement. She asserts a "stigma-plus" procedural due process claim and state law claims of breach of fiduciary duty, defamation, and slander and libel. Pending before the court are the defendants' motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  (Doc. ##134, 147.)  For the reasons that follow, the motions are granted.[1]

---

[1] This is not a recommended ruling. The parties consented to the jurisdiction of a magistrate judge and the case was transferred to the undersigned. (Doc. #138.)

I.  Facts

The following facts are taken from the plaintiff's fourth amended complaint[2] and are assumed to be true for purposes of the motions to dismiss.

The defendants were DCF employees. Jean Norvig ("Norvig") was a social worker; defendant Christine Lupke ("Lupke") was a social worker supervisor and Norvig's supervisor; and Carl Graham-Leichner ("Graham-Leichner") was a program supervisor and Norvig and Lupke's supervisor. (Doc. #114, Fourth Amended Compl. ¶¶9-11.) In August 1997, the defendants "prepared and submitted" to Connecticut superior court "a summary of facts substantiating allegations of neglect" as to the plaintiff. (Compl. ¶¶15-16.) Graham-Leichner filed "a petition for neglect against the plaintiff in Connecticut superior court." (Compl. ¶17.) Connecticut maintains a central registry for child abuse and neglect ("registry") pursuant to Conn. Gen. Stat. § 17a-101k. (Compl. ¶7.) The defendants "falsely and without cause or justification" placed the plaintiff's name on the registry. (Compl. ¶12.) They did not inform the plaintiff of her placement on the registry. (Compl. ¶14.) As a result, she had no opportunity to challenge her placement on the registry. (Compl. ¶14.)

---

[2]Although the plaintiff was self-represented when she commenced this litigation in 2015, the court subsequently appointed counsel. Pro bono counsel filed the operative complaint and the responses to the motions to dismiss.

At a hearing in November 1997, the superior court concluded that the petition for neglect was "unsubstantiated and should be withdrawn." (Compl. ¶17.) Graham-Leichner "withdrew the petition without a finding of neglect against the plaintiff and informed Norvig and Lupke of that outcome." (Compl. ¶17.) The defendants failed to remove the plaintiff's name from the registry. (Compl. ¶18.) Between 1997 and 1998, the plaintiff "communicate[d] . . . with the State of Connecticut Department of Children and Families but was never informed that she had been placed and remained" on the registry.[3] (Compl. ¶22.) From 1997 through 2012, the plaintiff sought, but did not obtain, employment with employers "who would have and/or did perform background checks upon her to check for her placement on the central registry for abuse and neglect." (Compl. ¶23.) In June 2012, the plaintiff discovered that she was on the registry when a prospective employer informed her that a background check indicated that she was on the registry. (Compl. ¶24.) On June 26, 2012, the plaintiff "made a request of the State of Connecticut for removal from the registry and the State of Connecticut removed the plaintiff's name . . . ." (Compl. ¶¶25-26.)

The plaintiff sues the three defendants in their individual capacities asserting a Fourteenth Amendment procedural due process

---

[3] The plaintiff does not allege any contact with DCF after 1998.

claim (count 1) and state law claims of breach of fiduciary duty (count 2); defamation (count 4)[4] and slander and libel (count 5).

II. Legal Standard

When considering a Rule 12(b)(6) motion to dismiss, the court must determine whether the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The court accepts the complaint's factual allegations as true, Twombly, 550 U.S. at 572, and "draw[s] all reasonable inferences in favor of the non-moving party." Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co., 517 F.3d 104, 115 (2d Cir. 2008). However, a court is "not bound to accept as true a legal conclusion couched as a factual allegation" or "to accept as true allegations that are wholly conclusory." Krys v. Pigott, 749 F.3d 117, 128 (2d Cir. 2014).

III. Discussion

    A. Stigma-Plus Due Process Claim

In count one, the plaintiff alleges that the defendants deprived her of a liberty interest without due process in violation

---

[4] The complaint does not contain a count 3.

4

of the Fourteenth Amendment when "in 1997 and continuing thereafter until 2012 [they] failed and refused to provide the plaintiff" with notice of her placement on the registry and denied her an opportunity to challenge her placement or seek removal. (Compl. ¶29.) As a result of her placement on the registry, she was denied employment opportunities because prospective employers consulted the registry. (Compl. ¶23.)

"A 'stigma-plus' claim is a subset of procedural due process.'" Grasson v. Bd. of Educ. of Town of Orange, 24 F. Supp. 3d 136, 147 (D. Conn. 2014). "To formulate a claim under the Due Process Clause of the Fourteenth Amendment, a plaintiff must demonstrate that he or she possesses a constitutionally protected interest in life, liberty, or property, and that state action has deprived him or her of that interest." Valmonte v. Bane, 18 F.3d 992, 998 (2d Cir. 1994). "'Stigma plus' refers to a claim brought for injury to one's reputation (the stigma) coupled with the deprivation of some 'tangible interest' [e.g., the loss of government employment] or property right (the plus), without adequate process." DiBlasio v. Novello, 344 F.3d 292, 302 (2d Cir. 2003). "Although damage to one's reputation is not by itself sufficient to invoke the procedural protection of the Due Process Clause, [a plaintiff] can demonstrate infringement of a protected liberty interest by showing that inclusion of her name [on a state

child abuse registry] resulted in 'stigma plus.'" McCaul v. Ardsley Union Free Sch. Dist., 514 F. App'x 1, 3-4 (2d Cir. 2013).

B. Conn. Gen. Stat. § 17a-101k, the Registry Statute

An explanation of Connecticut's registry statute is necessary for an understanding of the issues in this case.[5]

Established in 1996, the registry, which was maintained by DCF, consisted of reports of suspected abuse or neglect. Public Act 96-246, § 14.[6] Reports were required to be kept confidential, except where authorized specifically by statute or regulation. Id.

In 1997, when the plaintiff allegedly was added to registry, the registry statute did not require that individuals be given any notice or hearing before their names were placed on the registry. The statute did not provide any procedures by which individuals could challenge their placement.

---

[5] The court takes judicial notice of the pertinent state statute. See Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 75 (2d Cir. 1998) ("[A] district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6), including case law and statutes"); Robinson v. Wentzell, No. 3:18CV274(SRU), 2019 WL 1207858, at *6 (D. Conn. Mar. 14, 2019) (noting that it is "proper to take judicial notice of any pertinent state statutes")

[6] Public Act 96-246 provided that the "Commissioner of Children and Families shall maintain a registry of the reports received pursuant to sections 2 through 5, inclusive, of this act and shall adopt regulations to permit the use of the registry on a twenty-four hour basis to prevent or discovery abuse of children." Public Act 96-246, § 14.

In 2005, Conn. Gen. Stat. § 17a-101k was amended. See Public Act 05-207. The registry changed from a "registry of <u>reports</u>" to a "registry of the commissioner's <u>findings</u> of abuse or neglect of children." (Emphasis added.) The 2005 amendments added notice and hearing procedures that DCF was required to provide before placing an individual's name on the registry as well as appeal procedures. § 17-101k(b)(3), (c). For individuals "against whom a finding of abuse or neglect was substantiated prior to May 1, 2000," the statute stated that such individuals "may appeal such finding as provided by the statute." § 17a-101k(g).[7] The statute further provided that "[r]ecords containing unsubstantiated findings shall remain sealed, except that such records shall be made available to department employees in the proper discharge of their duties and shall be expunged by the commissioner five years from the completion date of the investigation if no further report is made about the individual subject to the investigation . . . ." § 17a-101k(h).

C. <u>Qualified Immunity</u>

The defendants move to dismiss the plaintiff's due process claim on the grounds of qualified immunity. They argue that in light of the case law and the relevant statute, they could not

---

[7]Section 17a-101k(g) states: "Any individual against whom a finding of abuse or neglect was substantiated prior to May 1, 2000, and who has not previously appealed such finding, may appeal such finding as provided in this section."

have known that their conduct violated clearly established law. (Doc. #134-1 at 17.)

"Qualified immunity shields government officials from claims for money damages unless a plaintiff pleads facts showing that (1) the official violated a statutory or constitutional right, and (2) the right was clearly established at the time of the challenged conduct." Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011) (quotation marks and citations omitted). The court has "discretion to decide which of the two prongs of qualified-immunity analysis to tackle first." Id.

As to the second prong, "[c]learly established means that, at the time of the [defendant's] conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful." District of Columbia v. Wesby, ___ U.S. ___, 138 S. Ct. 577, 589 (2018)(citation and quotation marks omitted). "In other words, existing law must have placed the constitutionality of the [defendant's] conduct 'beyond debate.'" Id. (quoting Ashcroft, 563 U.S. at 741). "This demanding standard protects 'all but the plainly incompetent or those who knowingly violate the law.'" Id. (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).

"To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent." Wesby, 138 S. Ct. at 590. "It is not enough that the rule is suggested

8

by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." Id. "Otherwise, the rule is not one that every reasonable official would know." Id. at 590 (internal quotation marks omitted).

"The 'clearly established' standard also requires that the legal principle clearly prohibit the [defendant's] conduct in the particular circumstances before him." Wesby, 138 S. Ct. at 590. "This requires a high 'degree of specificity.'" Id. (quoting Mullenix v. Luna, 577 U.S. ----, ----, 136 S.Ct. 305, 309 (2015) (per curiam)). "[C]ourts must not 'define clearly established law at a high level of generality, since doing so avoids the crucial question whether the [official] acted reasonably in the particular circumstances that he or she faced.'" Wesby, 138 S. Ct. at 590 (quoting Plumhoff v. Rickard, 572 U.S. 765, 779 (2014)). "Specifically, the law must be so clearly established with respect to the particular conduct and the specific context at issue that every reasonable official would have understood that his conduct was unlawful." Mara v. Rilling, 921 F.3d 48, 68-69 (2d Cir. 2019) (quotation marks and citation omitted).

"The doctrine [of qualified immunity] 'is often fact-intensive . . . ." Treizon Lopez v. Semple, No. 3:18CV1907(KAD), 2019 WL 2548136, at *6 (D. Conn. June 20, 2019). "[I]f facts are in dispute, a court may need to have a jury resolve them before it

9

can decide whether qualified immunity bars a plaintiff's claim . . . or, at least, it may require a full record on a motion for summary judgment to determine if there is a factual issue.'" Id. (quoting Birch v. City of New York, 184 F. Supp. 3d 21, 28 (E.D.N.Y. 2016)). "However, if, upon drawing every factual inference in favor of the plaintiff, the question is purely the state of law at the time of a defendant's allegedly tortious conduct, so that the court can determine whether a reasonable state [official] should have known that what he was doing violated the law, then a court can determine the availability of qualified immunity on a motion to dismiss under Rule 12(b)(6)." Birch, 184 F. Supp. 3d at 28. See McKenna v. Wright, 386 F.3d 432, 436 (2d Cir. 2004) (a qualified immunity defense may be asserted on a Rule 12(b)(6) motion "as long as the defense is based on facts appearing on the face of the complaint"). "Indeed, the district court should consider the application of qualified immunity at the earliest stage possible because the purpose of the doctrine is to protect state officials from having to defend against civil liability claims when they perform their duties reasonably." Treizon Lopez, 2019 WL 2548136, at *6.

In opposition to the defendants' argument, the plaintiff contends that "reasonable actors in defendants' positions would have known that plaintiff had a right not to be placed on the registry without notice or hearing, and to be removed or given

10

process after she had been placed on it without notice or a hearing." (Doc. #144 at 13.) She acknowledges that the statute did not require that the plaintiff be given notice and a hearing before being placed on the registry in 1997 but argues nonetheless that the Second Circuit's 1994 decision in Valmonte v. Bane 18 F.3d 992 (2d Cir. 1994) "would have put reasonable people in defendants' positions on notice" that an individual was entitled to due process before being listed on the registry. (Doc. #144 at 19.)

In Valmonte, the plaintiff sued the Commissioner of the New York State Department of Social Services and the Commissioner of the Orange County Department of Social Services ("the state") alleging that their inclusion of her name on the New York State Central Register of Child Abuse and Maltreatment ("the Central Register") violated her Fourteenth Amendment right of due process. She claimed that the state deprived her of a liberty interest by disseminating to potential employers her placement on the Central Register, and that the statutory procedures to allow her to challenge her designation were constitutionally inadequate. Valmonte v. Bane, 18 F.3d 992, 998 (2d Cir. 1994). On appeal, the Second Circuit concluded that the plaintiff stated a cause of action for deprivation of a liberty interest because her "inclusion on the list potentially damages her reputation by branding her as a child abuser, which certainly calls into question her good name,

11

reputation, honor, or integrity" and "[d]issemination to potential employers . . . gives rise to stigmatization." Id. at 1000. The Second Circuit then went on to carefully analyze the provisions and procedural safeguards in the New York statute, ultimately concluding that the "high risk of error produced by the procedural protections established by New York [was] unacceptable." Id. at 1004-05.

The plaintiff here argues that Valmonte "would have put a reasonable caseworker in these defendants' positions on notice that even if the [plaintiff] wasn't entitled to any particular statutory process" - because the Connecticut statute did not so require - that "some process . . . was required, a phone call or an email or some sort of process [that] in some way . . . would allow the person to know that they were on the registry and have a chance to contest that . . . ." (Doc. #181, Tr. at 18.)

The court's inquiry "is whether, in light of the relevant body of law, the unlawfulness of the defendants' actions was clearly established when they acted." Simon v. City of New York, 893 F.3d 83, 100 (2d Cir. 2018). It was not. No clearly established law precluded defendants' conduct at the time in question. Valmonte addressed the constitutionality of the New York state statutory scheme governing its registry.[8] The court is

---

[8]It is worth noting that Connecticut enacted its registry statute after Valmonte was decided. "Laws enacted by the state

12

not persuaded that it afforded the defendant social workers in this case notice that their conduct contravened clearly established law.

The plaintiff next argues that the protections added to the statute by the 2005 amendments for individuals listed on the registry post-2005 "would have put a reasonable DCF social worker on notice that those placed on the Registry before the amendment" were entitled to due process. (Doc. #144 at 21.) The defendants' failure to notify the plaintiff that she was on the registry "violated plaintiff's clearly established constitutional rights." (Doc. #144 at 22.)

The plaintiff does not claim that the defendants violated the statute. The statute does not specifically address notice requirements for persons who were listed on the registry before the amendments. Rather, she contends that the amendments should have spurred the defendants to take some action on their own initiative and provide the plaintiff some form of notice. No

---

legislatures are presumptively constitutional." Kennedy v. Louisiana, 554 U.S. 407, 465 (2008). In determining whether a government defendant's actions were objectively reasonable, a "heavy presumption in favor of qualified immunity" exists when a government official is enforcing a "presumptively valid statute." Connecticut ex rel. Blumenthal v. Crotty, 346 F.3d 84, 104 (2003). Here, the defendants reasonably could have concluded that they were not violating the Fourteenth Amendment when the plaintiff's name was placed on the DCF abuse and neglect registry without process because Conn. Gen. Stat. § 17a-101k did not require any.

precedent would have made clear to these defendants that their failure to afford the plaintiff administrative procedures not required by the statute violated the plaintiff's clearly established rights. The court cannot conclude that the defendants' alleged actions – or inactions - violated clearly established law. Accordingly, the defendants are entitled to qualified immunity.

    D.    State Law Claims

The court, having dismissed the federal claim, declines to exercise supplemental jurisdiction under 28 U.S.C. § 1367 over the state law claims and those claims are dismissed without prejudice.

IV.    Conclusion

For these reasons, the defendants' motions to dismiss are GRANTED as follows: Count 1, the § 1983 procedural due process claim, is dismissed with prejudice and counts 2, 4, and 5, the state law claims, are dismissed without prejudice.

SO ORDERED this 11th day of July 2019 at Hartford, Connecticut.

                                          _____/s/_____
                                          Donna F. Martinez
                                          United States Magistrate Judge